# EXHIBIT D



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Bridget E. Calhoun, Esq.**
**1001 Pennsylvania Ave., N.W.**
**Washington, DC 20004-0000**

Dept. of Homeland Security, OCC/WAS
901 North Stuart St., Suite 1307
Arlington, VA 22203

**Name: KARAKE, FRANCOIS**

A79-187-167

**D**ate of this notice: 6/17/2008

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
    FILPPU, LAURI S.
    HESS, FRED
    PAULEY, ROGER

tranc

**U.S. Department of Justice**  Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

---

File:  A79 187 167 - Arlington, VA                                    Date:        JUN 1 7 2008

In re: FRANCOIS KARAKE

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:   Bridget E. Calhoun, Esquire

ON BEHALF OF DHS:   Daniel I. Smulow
                    Associate Legal Advisor

CHARGE:

    Notice:   Sec.   212(a)(7)(A)(i)(I), I&N Act [8 U.S.C. § 1182(a)(7)(A)(i)(I)] -
                            Immigrant - no valid immigrant visa or entry document

APPLICATION:   Asylum; withholding of removal; Convention Against Torture

The respondent, a native and citizen of Rwanda, appeals from an Immigration Judge's December 3, 2007, decision denying his applications for asylum and withholding of removal pursuant to sections 208(a) and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a), 1231(b)(3) and withholding of removal pursuant to the Convention Against Torture (CAT). The Immigration Judge granted the respondent's request for deferral of removal pursuant to the CAT. The respondent's request for oral argument will be denied. The respondent's appeal will be sustained, in part, and the record will be remanded.

## I. FACTUAL BACKGROUND

The respondent was paroled into the United States on March 2, 2003, at San Juan, Puerto for the purpose of criminal prosecution for his participation in the murder of two United States citizen tourists in the Bwindi Impenetrable Forest in Uganda. The United States District Court for the District of Columbia granted his motion to suppress statements made to Rwandan and United States officials because they were given after he was tortured by Rwandan officials. *See United States v. Karake*, 443 F. Supp.2d 8, 94 (D.D.C. 2006). As a result, the Government dismissed the criminal charges against the respondent without prejudice on February 7, 2007, and these removal proceedings followed.

We provide a brief summary of the facts underlying the respondent's claim for relief from removal but incorporate by reference the Immigration Judge's comprehensive description of the factual background and testimony provided in this case. Specifically, the respondent is an ethnic Hutu. During Rwanda's civil war in the mid-1990s, the respondent fled the fighting and lived in

several refugee camps in Rwanda and the Democratic Republic of Congo. The Rwandan Patriotic Front (RPF) attacked the refugee camps. The respondent was arrested by RPF solders, beaten and held for 8 to 10 hours. RPF soldiers also shot at the respondent hitting him in the hip (Tr. at 62). He stated that after a series of attacks on the refugee camps by RPF soldiers in 1998 he felt compelled to join the Army for the Liberation of Rwanda (ALIR) to seek protection. He testified that he was considered a "first soldier" and that he was trained how to use a gun but that he never shot the gun because his ALIR unit did not have enough bullets. In early 1999, the respondent joined ALIR's Irondelle company, and he accompanied the company on a mission to Bwindi Impenetrable Forest (Bwindi), although he claims that he was not told anything about the purpose of the mission (Tr. at 77). Upon arrival at Bwindi, he was told to go into a house and take everything, including the food and water. The respondent heard gunshots in the distance and saw white people lining up. He testified that he was told to take the items that he stole and to go away (Tr. at 79). After returning to Congo, he heard on the radio that some tourists had been murdered. In 2000, the respondent renounced his membership in ALIR. In August 2000, the respondent was arrested by the RPF and taken to a prison for 6 to 7 months (Tr. of District Court proceedings at 304). The respondent testified that he was beaten with sticks all over his body and forced to write a statement about the ALIR and the 1994 genocide in Rwanda. He was released and allowed to go home for 8 months but was arrested again in December 2001. He was asked about the killings at Bwindi and was beaten until he confessed to the killings. The District Court found that the respondent suffered torture and that his statement was "extracted only after countless hours of repetitive questioning over a period of many months" and that the conditions under which he was held and abuse he endured while being interrogated shock the conscience and therefore render his statements involuntary and inadmissible. *See United States v. Karake, supra*, at 85-86. Under the theory of *res judicata*, the Immigration Judge adopted the District Court's finding and recognized the suppression of the respondent's statements made to Rwandan and American officials implicating him in the attack at Bwindi (I.J. at 22).

## II. CREDIBILITY

The Immigration Judge determined that the respondent was not a credible witness regarding his role in ALIR and the attacks on civilians in 1999 (I.J. at 18). Specifically, the Immigration Judge found the respondent's testimony that he fought with the ALIR but never harmed any civilians and did not play an active role in the Bwindi attack to be implausible and inconsistent with his testimony that his specific company carried out the Bwindi attack, that the respondent knew some details of the attack, that he looted property while armed, and that he saw white people lining up and walking on that day (I.J. at 19). In addition, the Immigration Judge found the respondent's testimony to be evasive and internally inconsistent (I.J. at 19-20). The Immigration Judge, however, found other aspects of the respondent's testimony credible based on the District Court's findings. Specifically, the Immigration Judge found that the evidence of record independently supports the respondent's account of torture and other abuse by the RPF following his arrest in 2000 (I.J. at 20-21). The respondent challenges the adverse portion of the Immigration Judge's credibility determination as clearly erroneous, arguing that the respondent's testimony was forthcoming, consistent and truthful and that translation and comprehension difficulties account for what appeared to be vague and evasive testimony.

A79 187 167

We note that this case is governed by the REAL ID Act of 2005 which was signed into law on May 11, 2005.[1] We review the Immigration Judge's findings of fact, including credibility determinations, under the clearly erroneous standard. *See* 8 C.F.R. § 1003.1(d)(3). A finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also* 67 Fed. Reg. 54,889 (Aug. 26, 2002). A fact-finding may not be overturned simply because the Board would have weighed the evidence differently or decided the facts differently had it been the fact-finder. *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

For the following reasons, we conclude that a remand is necessary for the Immigration Judge to reassess the respondent's credibility because some aspects of his adverse credibility determination are not supported by the record of proceedings. Specifically, the Immigration Judge stated that the respondent testified that when he tried to cross into Rwanda in 1998, he and other civilians had no guns, yet he testified on cross examination that a group of former Rwandan soldiers with guns accompanied him into Rwanda (I.J. at 20). However, the respondent's testimony consistently reflects that some people with guns showed them the way to get to Rwanda but that they split up at some point, and at the time RPF soldiers shot at him and the other refugees, they did not have guns (Tr. at 69, 131-32). In addition, the Immigration Judge noted that the respondent claimed that the ALIR did not provide training on how to use a weapon and that he never touched a gun when he was an ALIR member (I.J. at 20). The Immigration Judge appears to be confusing the respondent's testimony regarding his training by ex-Rwandan military members at a refugee camp with his training after he became a member of the ALIR. As the respondent points out in his brief, he consistently testified that after he joined the ALIR, he was trained on how to use a weapon and carried a gun (Tr. at 72-73; 121, 139). Moreover, the respondent's testimony about his location at a lake near the refugee camp in 1996 when RPF soldiers attacked was not inconsistent (Tr. at 103-104). Further, the respondent's testimony regarding the number of RPF attacks on him at the refugee camps was confusing and perhaps a bit garbled, but it is difficult to say that the respondent gave inconsistent statements in that regard. *See, e.g.*, Tr. at 62-63, 102-108, 123-31.

We note, however, that some of the inconsistencies and instances of evasive testimony that the Immigration Judge cited are supported by the record. For example, the respondent gave conflicting testimony about the type of training he received in 1997 from former Rwandan soldiers known as the FAR. The respondent testified before the Immigration Judge that ex-FAR soldiers trained him for two months in self-protection methods such as finding food for the elderly, women and children and finding hideouts (Tr. at 108). The respondent specifically stated that the ex-soldiers had weapons but did not train him how to use them and did not train him in fighting (Tr. at 109). Before the District Court, however, the respondent testified that the former solders trained him for three months in techniques for fighting and self-defense and in using a weapon (Group Exh. 7, Tab H at 279-81). When made aware of the discrepancy, the respondent first stated that he was trained

---

[1] *See* section 101(h)(2) of the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief Act of 2005, Div. B, Pub. L. No. 109-13, 119 Stat. 23 (to be codified in various sections of 8 U.S.C.), indicating that its provisions apply to asylum claims filed on or after the date of enactment, i.e., May 11, 2005.

3

in the weapon of self-protection such as hiding (Tr. at 118-19). However, three times he evaded answering the question "is it your testimony they never showed you personally how to use a gun?" He finally answered, "Yes, they would show me, and we would see it in a book." (Tr. at 122). This testimony indicates that ex-FAR soldiers did train the respondent in the use of a gun. Another example of an inconsistency is the respondent's testimony that he had no idea what the ALIR's mission was, yet he testified in the District Court that the mission was to liberate the country. *Compare* Tr. at 134 *with* Group Exh. 7, Tab H at 285. Further, while the respondent alleges translation or comprehension difficulties, the record shows a number of occasions where the respondent did not give a direct answer to clear and specific questions, requiring the government attorney to continue to rephrase the question until the respondent finally provided an answer. *See, e.g.,* Tr. at 99-101, 122-23. However, because the Immigration Judge erred in relying on several inconsistencies that do not exist in the record, we find it appropriate to remand the record for a new credibility finding.

### III. MANDATORY BARS TO ASYLUM AND WITHHOLDING OF REMOVAL

The Immigration Judge held that the respondent is barred from asylum, withholding of removal under section 241(b)(3) of the Act and withholding of removal under the CAT. *See* sections 208(b)(2)(A)(i), 241(b)(3)(B) of the Act; 8 C.F.R. § 1208.16(d)(2). Specifically, the Immigration Judge found that three mandatory bars to asylum and withholding of removal apply to the respondent: (i) engaging in a terrorist activity or representing a terrorist organization; (ii) persecuting others; (iii) reasonable grounds for regarding the respondent as a danger to the security of the United States (I.J. at 22). As explained below, we find that the evidence indicates that the three grounds for mandatory denial may apply but, in light of our remand for a reassessment of the respondent's credibility, we find it appropriate to remand on the question of whether the respondent has met his burden of proving by a preponderance of the evidence that such grounds do not apply. 8 C.F.R. § 1240.8(d).

#### A. Terrorist Activity

We begin our analysis by setting forth the relevant sections of the Act. Section 208(b)(2)(A)(v) of the Act bars the Attorney General from granting asylum to an alien who is:

> inadmissible under subclause (I), (II), (III), (IV) or (V) of section 212(a)(3)(B)(i) or removable under section 237(a)(4)(B) (relating to terrorist activity), unless, in the case only of an alien inadmissible under subclause (IV) of section 212(a)(3)(B)(i), the Attorney General determines, in the Attorney General's discretion, that there are not reasonable grounds for regarding the alien as a danger to the security of the United States;

Section 241(b)(3)(B)(iv) of the Act bars the Attorney General from granting withholding of removal to an alien when "there are reasonable grounds to believe that the alien is a danger to the security of the United States." For purposes of this clause, an alien who is described in section 237(a)(4)(B)(any alien who has engaged, is engaged, or at any time after admission engages in any terrorist activity as defined in section 212(a)(3)(B)(iv) of the Act is deportable), shall be considered to be an alien with respect to whom there are reasonable grounds for regarding as a danger to the security of the United States.

A79 187 167

Although the DHS did not charge the respondent with being inadmissible under section 212(a)(3)(B) of the Act, we find that the evidence indicates that the terrorism bar may apply because the respondent is inadmissible as an alien who has engaged in a terrorist activity. *See* section 212(a)(3)(B)(i)(I) of the Act. In particular, the respondent admitted that he joined the ALIR in 1998, received training in the use of a gun, and, as a first soldier in the Irondelle company, he went armed to Bwindi park, looted a hotel and saw white people lining up and walking surrounded by armed rebels (Tr. at 72, 79-80, 139). We find that this is *prima facie* evidence that the respondent may have engaged in a terrorist activity, as defined in section 212(a)(3)(B)(iv) of the Act. In addition, it appears that the respondent would be inadmissible under section 212(a)(3)(B)(i)(VIII) of the Act because he received military-type training in the use of a firearm by a terrorist organization (Tr. at 72). We reject the respondent's argument that he is not subject to the terrorist bar because the ALIR was not designated as a terrorist organization at the time he was a member and that he was not involved in or did not have any knowledge of the ALIR's terrorist activities. Contrary to the respondent's argument, there is no requirement that the respondent have knowledge of the organization's terrorist activities, only that he obtained military-type training from or on behalf of any organization that, at the time of the training, was a terrorist organization. The evidence clearly shows that, regardless of whether the ALIR was officially designated as a terrorist organization, at the time the respondent received training and was involved with the ALIR, it was a terrorist organization within the meaning of section 212(a)(3)(B)(vi)(III) of the Act; *see also Daneshvar v. Ashcroft*, 255 F.3d 615, 627-28 (6th Cir. 2004). A knowledge requirement is relevant only to determinations under sections 212(a)(3)(B)(iv)(IV), (V) and (VI) of the Act regarding the solicitation of funds or members or material support grounds of inadmissibility which are not at issue in this case. *Cf. Daneshvar v. Ashcroft, supra.*

The Immigration Judge concluded that the respondent did not meet his burden of showing that this bar does not apply, in part, based on his adverse credibility finding. *See Matter of S-K-*, 23 I&N Dec. 936 (BIA 2006). Because we are remanding for a new credibility finding, we find it appropriate to remand for a new determination regarding the terrorist bar, including a determination on whether the respondent is barred from asylum and withholding of removal under section 212(a)(3)(B)(i)(VIII) of the Act for having received military-type training in the use of a firearm by a terrorist organization.

B. Persecutor of Others

The Immigration Judge also concluded that the Department of Homeland Security provided *prima facie* evidence that the respondent, as an ALIR member, may have ordered, incited, or otherwise participated in the persecution of others on account of race or nationality. *See* section 208(b)(2)(A)(i) of the Act. This *prima facie* evidence includes the respondent's testimony situating him in the midst of the Bwindi attack and the testimony of Mitchell Kiever, one of the hostages who escaped from Bwindi, as well as the findings of fact from the District Court case that the ALIR targeted English speaking tourists and left notes with the victims' bodies stating that they were killed because of Anglo-Saxon support for the Tutsi minority in Rwanda (Tr. at 170-81; Group Exh. 7, Tab H at 289-296; *Karake, supra*, at 19-20). The respondent does not dispute that the ALIR engaged in atrocities at Bwindi and that he was present while the tourists were taken hostage, although he claims that he did not witness or have any involvement in their murders. We find that the Immigration Judge correctly determined that the evidence suggests that the respondent would be barred from

5

relief due to persecution of others on account of race or nationality, thereby shifting the burden to the respondent to prove by a preponderance of the evidence that the bar does not apply. The respondent argues that he did not know that the tourists faced harm or that ALIR members were persecuting or about to persecute anyone or that, even if he knew the tourists would be harmed, he did nothing to materially assist the persecution. Further, he argues that his looting of a nearby building has no connection with the murders and that there is no evidence that he was involved in the persecution. However, the persecutor bar is to be broadly applied and does not require direct personal involvement in the acts of persecution. *See, e.g., Matter of* A-H-, 23 I&N Dec. 774, 784 (A.G. 2005); *Matter of Rodriguez-Majano*, 19 I&N Dec. 811, 815 (BIA 1988); *Higuit v. Gonzales*, 433 F.3d 417, 421 (4th Cir. 2006) (stating that the text of the statute makes clear that while the commission of actual physical harm may be sufficient to bring an alien within the persecution exception, it is not necessary). But again, because we are remanding for a reassessment of the respondent's credibility, we find it appropriate to remand on the question of whether the respondent has met his burden to show that the bar does not apply.

C. Danger to the Security of the United States

The Immigration Judge further concluded that the respondent is barred from relief because there are reasonable grounds for regarding him as a danger to the security of the United States. *See* sections 208(b)(2)(A)(iv) and 241(b)(3)(B)(iv) of the Act. The Immigration Judge cited the fact that the respondent admitted that he was a member of the ALIR, which is a terrorist organization pursuant to the State Department's Terrorist Exclusion List. In addition, he stated that the respondent did not provide evidence to rebut the DHS's claim that he is a member of a group that the United States government deems a terrorist organization (I.J. at 24). The respondent argues that the Immigration Judge gave improper weight to the inclusion of the ALIR on the State Department's list because it was placed on the list after the respondent renounced his membership. The respondent also argues that Congress intended to limit the bar only to those aliens who actually pose a danger, not to those who possibly pose a danger to national security.

We note that the Immigration Judge found the respondent subject to this mandatory bar because he did not provide evidence to rebut the DHS's claim that he is a member of a group that the United States government deems a terrorist organization (I.J. at 24). However, as the respondent argues, there is nothing in the record to suggest that the respondent, at the present time, is a member of the ALIR or any other group that is hostile to the United States. But, we do agree with the Immigration Judge that the DHS has provided *prima facie* evidence that the respondent participated in the persecution of others and engaged in a terrorist activity, and as such, there is *prima facie* evidence of reasonable grounds for regarding him as a danger to the security of the United States. We note that the "reasonable grounds for regarding" standard is satisfied if there is information that would permit a reasonable person to believe that the alien may pose a danger to the national security, and it is enough that the information relied upon by the government is not "intrinsically suspect." *Matter of A-H-, supra*, at 789-80. In addition, the Attorney General has found that the level of danger required under the statute need not be particularly high and that "any nontrivial level of danger to national security is sufficient to trigger this statutory bar." *Id.* at 788. Again, we find it appropriate to remand for a new determination on whether the respondent has met his burden of demonstrating that the bar does not apply. Upon remand, we ask the parties to address section 241(b)(3)(B)(iv) of the Act, which states, "an alien who is described in section 237(a)(4)(B) shall

A79 187 167

be considered to be an alien with respect to whom there are reasonable grounds for regarding as a danger to the security of the United States."

Accordingly, the following orders are entered.

ORDER: The respondent's appeal is sustained, in part.

FURTHER ORDER: The record is remanded for further proceedings consistent with the foregoing opinion.

_____
FOR THE BOARD

7