# EXHIBIT E

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
901 NORTH STUART ST., STE.1300
ARLINGTON, VA  22203


CROWELL & MORING, LLP
CALHOUN, ESQ., BRIDGET E.
1001 PENNSYLVANIA AVE., NW
WASHINGTON, DC  20004

IN THE MATTER OF            FILE A 079-187-167     DATE: Sep 17, 2008
KARAKE, FRANCOIS


___ UNABLE TO FORWARD - NO ADDRESS PROVIDED

X   ATTACHED IS A COPY OF THE DECISION OF THE IMMIGRATION JUDGE.  THIS DECISION
    IS FINAL UNLESS AN APPEAL IS FILED WITH THE BOARD OF IMMIGRATION APPEALS
    WITHIN 30 CALENDAR DAYS OF THE DATE OF THE MAILING OF THIS WRITTEN DECISION.
    SEE THE ENCLOSED FORMS AND INSTRUCTIONS FOR PROPERLY PREPARING YOUR APPEAL.
    YOUR NOTICE OF APPEAL, ATTACHED DOCUMENTS, AND FEE OR FEE WAIVER REQUEST
    MUST BE MAILED TO:     BOARD OF IMMIGRATION APPEALS
                           OFFICE OF THE CLERK
                           P.O. BOX 8530
                           FALLS CHURCH, VA  22041


___ ATTACHED IS A COPY OF THE DECISION OF THE IMMIGRATION JUDGE AS THE RESULT
    OF YOUR FAILURE TO APPEAR AT YOUR SCHEDULED DEPORTATION OR REMOVAL HEARING.
    THIS DECISION IS FINAL UNLESS A MOTION TO REOPEN IS FILED IN ACCORDANCE
    WITH SECTION 242B(c)(3) OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C.
    SECTION 1252B(c)(3) IN DEPORTATION PROCEEDINGS OR SECTION 240(c)(6),
    8 U.S.C. SECTION 1229a(c)(6) IN REMOVAL PROCEEDINGS.  IF YOU FILE A MOTION
    TO REOPEN, YOUR MOTION MUST BE FILED WITH THIS COURT:

                           IMMIGRATION COURT
                           901 NORTH STUART ST., STE.1300
                           ARLINGTON, VA  22203


___ OTHER: _____
           _____

                           _____
                           COURT CLERK
                           IMMIGRATION COURT                    FF
     CC: RAPHAEL H. CHOI, DHS CHIEF COUNSEL
         901 N. STUART ST., SUITE 708
         ARLINGTON, VA,  22203

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
United States Immigration Court
901 North Stuart Street, Suite 1300
Arlington, Virginia 22203

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | IN REMOVAL PROCEEDINGS |
| | ) | |
| KARAKE, Francois | ) | File No. :      A# 079-187-167 |
| Respondent | ) | |
| | ) | |

APPLICATIONS:     Asylum, pursuant to INA § 208(a);
Withholding of Removal, pursuant to INA § 241(b)(3);
Withholding of Removal, under the United Nations Convention Against
Torture and Other Cruel, Inhuman or Degrading Treatment or
Punishment ("CAT"), pursuant to 8 C.F.R. § 1208.16 (2008); and
Deferral of Removal, under the CAT, pursuant to 8 C.F.R. § 1208.17.

### APPEARANCES

**ON BEHALF OF RESPONDENT:**
Bridget E. Calhoun, Esq.
Ryan C. Tisch, Esq.
Matthew R. Scarlato, Esq.
Nancy J. Craig, Esq.
Crowell & Moring, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

**ON BEHALF OF THE DHS:**
Jo Ellen Ardinger, Esq.
Daniel I. Smulow, Esq.
Associate Legal Advisors
Department of Homeland Security
901 North Stuart Street, Suite 1307
Arlington, Virginia 22203

### DECISION AND ORDER

#### I. INTRODUCTION

*A.     Procedural History*

Respondent is a native and citizen of Rwanda, who was paroled into the United States on March 2, 2003 at San Juan, Puerto Rico. The Department of Homeland Security ("DHS") commenced removal proceedings against Respondent on February 27, 2007 by filing a Notice to Appear ("NTA") with the Court. The DHS charges Respondent as inadmissible pursuant to INA § 212(a)(7)(A)(i)(I)

1

of the Immigration and Nationality Act ("INA" or "Act"), as amended, as an immigrant who, at the time of application for admission, was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, other suitable travel document, or document of identity and nationality as required under INA § 211(a).

At a master calendar hearing before the Arlington Immigration Court, Respondent, through counsel, conceded proper service of the NTA, admitted to the factual allegations, and conceded the charge under INA § 212(a)(7)(A)(i)(I).   In its December 3, 2007 opinion, this Court found Respondent's charge of removability to be sustained by clear and convincing evidence. See 8 C.F.R. § 1240.8(a).

On August 17, 2006, following an indictment charging Respondent and two other defendants with killing American tourists in the Bwindi Impenetrable National Forest ("Bwindi") on March 1, 1999, the United States District Court for the District of Columbia granted Respondent's joint motion to suppress statements made to Rwandan and United States officials,  finding that the statements resulted from physical and psychological coercion and torture. See United States v. Karake, 443 F.Supp. 2d. 8, 94 (D.D.C. 2006).

As relief from removal, Respondent renewed his application for asylum, filed with the Arlington Immigration Court on June 19, 2007.  In the alternative, he sought withholding of removal to Rwanda under INA § 241(b)(3), withholding of removal to Rwanda under the CAT pursuant to 8 C.F.R. § 1208.16, and deferral of removal to Rwanda under 8 C.F.R. § 1208.17.

On December 3, 2007, the Immigration Court denied Respondent's application for asylum, withholding of removal under INA § 241(b)(3), and withholding of removal under the CAT. The Court granted Respondent's request for deferral of removal under the CAT.

On December 21, 2007, the Respondent appealed the Court's decision to the Board of Immigration Appeals ("Board"), arguing that the Court's adverse credibility finding and application of the terrorist activity and persecutor of others bars under 8 C.F.R. §§ 1208.13(c) and 1208.16(d)(2) were clearly erroneous. He further contended that the Court erred in finding that Respondent was a danger to the security of the United States under 8 C.F.R. §§ 1208.13(c)(2)(i)(C) and 1208.16(d)(2).

On June 17, 2008, the Board sustained the Respondent's appeal in part and remanded the record to the Immigration Court for further proceedings. See Francois Karake, A79187167 (BIA Jun. 17, 2008). The Board requested that the Court reassess the Respondent's credibility because some aspects of its adverse credibility determination were not supported by the record of proceedings. Id. at 3. The Board added that in light of its remand for a reassessment of Respondent's credibility, the Court shall consider whether Respondent met his burden of proving by a preponderance of the evidence that the terrorist activity, persecutor of others, and danger to the security of the United States mandatory bars to asylum and withholding removal under INA § 241(b)(3) apply. Id. at 4. The Board additionally requested that upon remand, the parties address INA § 241(b)(3)(B)(iv), which states, "an alien who is described in section 237(a)(4)(B) shall be considered to be an alien

with respect to whom there are reasonable grounds for regarding as a danger to the security of the United States." Id. at 6-7.

After a careful review of the evidence, and for the reasons discussed below, the Court continues to find not credible several material aspects of Respondent's testimony. In light of its reassessment of Respondent's credibility, it further finds that the terrorist activity, persecutor of others, and danger to the security of the United States bars to asylum and withholding of removal apply in this case.

### B.  Documentary Evidence

The record contains the following documentary evidence: Respondent's Notice to Appear (Exhibit 1); Respondent's amended I-589 and supporting statements, filed with the Arlington Immigration Court on June 19, 2007 (Exhibit 2); Respondent's application for relief, which the Court denied on November 6, 2007 (Exhibit 3); his response to the DHS' motion to pretermit his application for relief (Exhibit 4); his motion to give collateral estoppel effect to the Federal District Court's findings and preclude the DHS from relitigating Respondent's past persecution, which the Court denied on November 6, 2007 (Group Exhibit 5); the Government's opposition to Respondent's motion to preclude relitigation (Group Exhibit 6); Respondent's prehearing memorandum of law, containing Tabs A-M (Group Exhibit 7); the DHS' evidentiary submission, with Tabs 1-24 (Group Exhibit 8); and a U.S. Department of State comment on Respondent's case, dated July 20, 2007 (Exhibit 9).

Group Exhibit 7 contains a copy of United States v. Karake, 443 F.Supp.2d. 8 (D.D.C. 2006). (Tab A); an affidavit by Sandra S. Crosby, M.D. (Tab B); and articles on Rwanda's political situation (Tabs C-E); the 2006 Department of State Country Report for Rwanda, dated March 6, 2007 (Tab F); the 2005 Department of State Country Report for Rwanda, dated March 8, 2006 (Tab G); the transcript for Karake, 443 F.Supp.2d at 8 (Tab H); an affidavit by Michael Alan Grodin, M.D. (Tab I); a psychological evaluation by Judy B Okawa, Ph.D. (Tab J); an Amnesty International article on torture in Rwanda (Tab K); a CNN.com article on the Bwindi massacre (Tab L); and an Amnesty International article on extrajudicial executions at a Rwandan detention facility (Tab M).

Group Exhibit 8 contains Respondent's parole documents (Tab 1); U.S. Department of State Terrorist Exclusion List and 2002 Patterns of Global Terrorism (Tab 2); Respondent's form I-213 (Tab 3); docket sheets for Karake, 443 F.Supp. 2d at 8 (Tab 4); excerpts from books on Rwanda and the Bwindi massacre (Tabs 5-6); information on Bwindi massacre victims (Tab 7); Dateline's "Survivor's Story," dated August 10, 1999 (Tab 8); translated ALIR notes from the Bwindi massacre (Tab 9); photographs of Bwindi Impenetrable Forest National Park after the March 1999 attack (Tab 10); a map of the Bwindi Impenetrable Forest (Tab 11); news and Internet articles on Rwanda's insurgency (Tabs 12-13, 18-24); the U.S. Department of State's 2004 Country Report on Terrorism (Tab 14); the 2006 Department of State Country Report for Rwanda, dated March 6, 2007 (Tab 15); a USCIS Resource Information Center article on ALIR (Tab 16); and a December 2001 Human Rights Watch article on Rwanda (Tab 17).

The record also contains the Respondent's and Government's Closing Arguments, submitted on November 20, 2007; and the Board's June 17, 2008 remand, Francois Karake, A79187167 (BIA Jun. 17, 2008).

## II. ANALYSIS

### A.    Credibility

#### 1.    The Board's Findings Relating to Credibility

In its June 17, 2008 remand, the Board requested that the Court reassess the Respondent's credibility because some aspects of its adverse credibility determination were not supported by the record of proceedings. See Karake at 3. First, the Board determined that Respondent consistently testified that people with guns showed him and other Rwandans the way back to their country, but that the civilians did not carry guns. Second, it found that Respondent consistently testified that after he joined ALIR, the organization trained him to use a weapon and carry a gun. Third, the Board noted that Respondent's testimony about his location at a lake near a refugee camp in 1996 "was confusing and perhaps a bit garbled," but not necessarily inconsistent. The Court will defer to the Board's findings on these aspects of the Respondent's credibility.

The Board added that the record supports other inconsistencies and instances of evasive testimony cited in the Court's December 3, 2007 decision. First, it agreed that the Respondent gave conflicting testimony about the type of training he received in 1997 from ex-FAR Rwandan soldiers. The Respondent testified before the Court that ex-FAR soldiers trained him for two months in self-protection methods such as finding food for the elderly, women, and children, and in finding hideouts. Id.; Tr. at 108. He stated that ex-soldiers had weapons, but did not train him how to use them and did not train him to fight. Id.; Tr. at 109. Before the District Court, however, the Respondent testified that the former soldiers trained him for three months in techniques in fighting and self-defense and in using a weapon. Id.; Group Exhibit 7, Tab H at 279-81. When made aware of this discrepancy, Respondent first stated that he was trained in the "weapon of self-protection" such as hiding. Id. at 4, Tr. at 118-19. However, three times he evaded answering a question relating to whether the ex-FAR personally showed him how to use a gun, and he eventually admitted that they did. Id.; Tr. at 122. The Board determined that this testimony indicates that the ex-FAR soldiers trained him in the use of a gun. Id.

Second, the Board agreed that the Respondent was inconsistent when he testified that he had no idea what ALIR's mission was, after having testified in the District Court that the mission was to liberate the country. Id.; Tr. at 134; Group Exhibit 7, Tab H at 285.

Third, the Board noted that although the Respondent alleges translation or comprehension difficulties, "the record shows a number of occasions where the Respondent did not give a direct answer to clear and specific questions, requiring the government attorney to continue to rephrase the question until the Respondent finally provided an answer." Id.; Tr. at 99-101, 122-23.

4

2. *Uncontested Court Findings Relating to the Respondent's Credibility*

The Court notes that the Board did not contest other credibility findings in the December 3, 2007 decision. First, the Court had found Respondent's testimony relating to his role in ALIR atrocities not credible. See December 3, 2007 decision, at 19. Respondent's testimony that he was not aware of atrocities committed by ALIR against the kidnapped tourists at Bwindi conflicts with his testimony that he saw "white people" lining up and walking at Bwindi on the day of their kidnapping, and with evidence in the record demonstrating that his specific company in ALIR, Irondelle, carried out the Bwindi attacks on March 1, 1999. See INA § 208(b)(1)(B)(iii); See also Karake, supra at 19-20; Group Exhibit 4, Tabs 5-13.

The Court also found this claim unreasonable because the information Respondent admitted situates him at the scene of the massacre and indicates that he knew at least some details of the attack. See December 3, 2007 decision at 19. Respondent admitted that as a first soldier of Irondelle, he followed his instructions on March 1, 1999 to loot restaurants or houses and steal all the items he could carry, which he later turned over to ALIR. He also saw white people lining up and walking that day. This testimony places Respondent at Bwindi on the date of the massacre with the company of ALIR that murdered and raped the Bwindi victims. Respondent's acknowledgment that he saw white people line up and walk also indicates that he knew that ALIR had captured them and instructed them to line up and leave with the soldiers. Finally, Respondent's participation in the looting of property while armed supports the Government's claim that he actively played a role in the attack on Bwindi that day.

Second, the Court had found that when asked whether he knew whether Hutus participated in the Rwandan genocide, whether the group fleeing in to Rwanda in 1998 consisted of Tutsis or Hutus, and how he joined ALIR, Respondent responded vaguely or refused to answer. See December 3, 2007 decision at 19; Tr. at 99-101, 133.

3. *Credibility Analysis*

After assessing the Board's findings on Respondent's credibility, the Court continues to find him not credible in relation to several of his accounts of his ALIR activities and the circumstances relating to the Bwindi attack on March 1, 1999.

Respondent's testimony is sufficient to meet his burden of proof if it is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of his claim. See Matter of Dass, 20 I&N Dec. 120, 124 (BIA 1989); see also 8 C.F.R. § 1208.13(a). However, testimony is not considered credible when it is inconsistent, contradictory with current country conditions, or inherently improbable. See Matter of S-M-J-, 21 I&N Dec. 722, 730 (BIA 1997). While omissions of facts in an asylum application of during testimony might not, in themselves, support an adverse credibility determination, the omission of key events coupled with numerous inconsistencies my provide a specific and cogent reason to support an adverse credibility finding. Matter of A-S-, 21

I&N Dec. 1106 (BIA 1998).

The REAL ID Act of 2001 applies to this case. Pub. L. No. 109-13, Div. B, 119 Stat. 230 (2005). In making credibility determinations, this Court has considered the totality of the circumstances and all relevant factors. See INA § 208(b)(1)(B)(iii). This Court thus has considered the Respondent's candor, responsiveness, the inherent plausibility of his account, and the consistency between his oral and written statements, and the internal consistency of each statement with other evidence of record. See id. The inconsistencies, inaccuracies, or falsehoods in Respondent's case do not need to go to the heart of his claim. See id. When the Court has determined that the Respondent should provide corroborating evidence, the evidence must be provided unless he does not have the evidence and cannot reasonably obtain it. See INA § 208(b)(1)(B)(ii).

When examining the totality of the circumstances and all relevant factors, the Court continues to find the Respondent not credible regarding his role in ALIR and the attacks on civilians in 1999. See INA § 208(b)(1)(B)(iii); Dass, 20 I&N Dec. at 124. Even after considering the Board's findings that Respondent was not inconsistent in his testimony relating to whether civilians carried guns during his re-entry in to Rwanda, whether ALIR trained him to use a weapon, and about his location at a lake near a refugee camp in 1996, the Court believes that numerous inconsistent and evasive testimony affect Respondent's most significant claims. While Respondent may have been consistent about whether ALIR trained him to use a weapon, he was evasive and inconsistent on the more relevant issue of whether ex-FAR soldiers trained him personally to fight with weapons in the context of a civil war. See Tr. At 108-109, Group Exhibit 7, Tab H at 279-81. His inconsistent testimony about ALIR's mission, particularly after he admitted having joined the organization, also raises questions about the acts he witnessed or participated in as an ALIR member. See Tr. at 134; Group Exhibit 7, Tab H at 285.

The Court also considers these inconsistencies in the context of other inconsistent statements Respondent made relating to the March 1, 1999 atrocities. Respondent's testimony situating him at Bwindi on the date of the attack, with a view of the kidnapped tourists, and participating in part of the attack on Bwindi that involved looting significantly conflicts with his claim that on March 1, 1999, he had no knowledge of ALIR's violent acts or the attack on the tourists. See INA § 208(b)(1)(B)(iii). Thus the aspects of the Court's December 3, 2007 credibility determination that the Board corrected improve certain aspects of Respondent's credibility, but do not substantially rehabilitate Respondent's inconsistent, vague, and evasive testimony relating to his general involvement in ALIR or the Bwindi attack. See id.; see also INS v. Elias-Zacarias, 502 U.S. 478 (1992) (requiring specific and detailed evidence to support a claim). Rather, the Court finds that his testimony continues to warrant an adverse credibility finding on these issues.

B.     Mandatory Bars to Asylum and Withholding of Removal Under INA § 241(b)(3) and CAT

The Board has requested that in light of its remand for a reassessment of Respondent's credibility, the Court shall consider whether Respondent met his burden of proving by a preponderance of the

evidence that three mandatory bars to asylum and withholding of removal under INA § 241(b)(3) apply. The Court finds that the bars apply under its revised credibility findings.

## 1.     Engaging in a Terrorist Activity

First, the Court finds that the terrorist activity bar applies to the Respondent. A mandatory bar to asylum applies when an alien is inadmissible under INA §§ 212(a)(3)(B)(i)(I)-(V), unless, in the case of an alien inadmissible under INA § 212(a)(3)(B)(i)(IV), the Attorney General determines, in its discretion, that there are not reasonable grounds for regarding the alien as a danger to the security of the United States. INA § 208(b)(2)(A)(v).

Although the Government did not charge the Respondent with inadmissibility under INA § 212(a)(3)(B), the Court finds that the evidence indicates that the terrorism bar applies because the Respondent is inadmissible as an alien who has engaged in terrorist activity. See INA § 212(a)(3)(B)(i)(I). The Court defers to the Board's findings that the Respondent's admission that he joined ALIR in 1998, received training in the use of a gun, and, as a first soldier in the Irondelle company, went to Bwindi park while armed, looted a hotel, and saw white people lining up and walking surrounded by armed rebels constitutes *prima facie* evidence of engagement in terrorist activity under INA §§ 212(a)(3)(B)(iv)(I)-(II), which refer to the commission, preparation, or planning of terrorist activity. See Remand at 5; Tr. at 72, 79-80, 139. Because Respondent received military-type "training" in the use of a firearm by a terrorist organization, his acts also fall within the realm of engagement in "terrorist activity" contemplated in the Act. See INA §§ 212(a)(3)(B)(iii)-(iv); Tr. at 72.

The Board has also noted that there is no requirement that Respondent have knowledge of the organization's terrorist activities. Rather, it is sufficient to show that he obtained military-type training from or on behalf of an organization that, at the time of the training, was a terrorist organization under INA § 212(a)(3)(B)(vi)(III). See INA § 212(a)(3)(B)(iv)(VI). The "evidence clearly shows that...[ALIR] was a terrorist organization within the meaning of section 212(a)(3)(B)(vi)(III) of the Act" at the time of Respondent's membership. See Remand at 5. The "knowledge requirement is relevant only to determinations under sections 212(a)(3)(B)(iv)(VI), (V) and (VI) of the Act regarding the solicitation of funds or members or material support grounds of inadmissibility which are not at issue in this case." See Remand at 5.

The Board additionally found, and the Court agrees, that Respondent received weapons training in ALIR at the time when ALIR fit the description of a terrorist organization. Because the Government has established *prima facie* evidence of terrorist activity, Respondent has the burden to provide credible testimony or evidence to establish, by a preponderance of the evidence, that the terrorism bar does not apply. See 8 C.F.R. § 1240.8(d); Matter of S-K-, 23 I&N Dec. 936, 939 (BIA 2006); Matter of R-S-H-, 23 I&N Dec. 629, 640 (BIA 2003). The Court, on remand, has not found Respondent credible on his general involvement in ALIR or the Bwindi attack. See Part II(A)(3), supra. It therefore continues to find that Respondent has not met this burden and that the terrorist activity bar applies in this case. See id.

2. *Persecutor of Others*

Second, the Court's revised credibility assessment does not change its conclusion that the DHS provided *prima facie* evidence that the Respondent, as an ALIR member, may have ordered, incited, or otherwise participated in the persecution of others on account of race or nationality. *See* INA § 208(b)(2)(A)(i). This *prima facie* evidence includes Respondent's admission that he was an ALIR member, and the evidence that places him at the Bwindi national park during the March 1, 1999 attack, when he was in view of the kidnapped tourists and participated in looting. The record further indicates that ALIR kidnapped, attacked, murdered, and raped tourists, whom ALIR had identified as "Anglophiles" or persons associated with the English or Americans. *See* Group Exhibit 8, Tabs 5-13; Group Exhibit 7, Tab H; Tr. at 170-81.

The Court therefore defers to the Board's finding that due to this *prima facie* evidence, the burden shifts to the Respondent to demonstrate by a preponderance of the evidence that the persecutor bar does not apply. *See* INA § 208(b)(2)(A)(i); 8 C.F.R. § 1230.8(d). *See* Remand at 5-6. Respondent alleges that his looting had no connection with the murders, and that there was no evidence of his involvement in the persecution. However, the persecutor bar should be broadly applied, and does not require direct personal involvement in the acts of persecution. *See, e.g.*, Higuit v. Gonzales, 433 F.3d 417, 421 (4th Cir. 2006); Matter of A-H-, 23 I&N Dec. 774, 784 (A.G. 2005); Matter of Rodriguez-Majano, 19 I&N Dec. 811, 815 (BIA 1988). Moreover, nothing in this Court's revised credibility finding supports the Respondent's claim that he was not involved in the persecution of others. *See* Part II(A)(3), *supra*. Rather, the Court continues to find Respondent not credible on his general involvement in ALIR or the Bwindi attack. *See* id. Respondent fails to credibly establish, by a preponderance of the evidence, that he did not participate in ALIR's atrocities, and persecute others on account of a protected ground. *See* 8 C.F.R. §§ 1208.13(c)(2)(ii), 1208.13(c)(2)(i)(E), 1208.16(d)(2). The persecutor bar therefore applies in this case.

3. *Danger to the Security of the United States*

Third, the Court finds that reasonable grounds exist for regarding Respondent as a danger to the security of the United States. *See* INA §§ 208(b)(2)(A)(iv); 241(b)(3)(B)(iv). Withholding of removal is barred when there are reasonable grounds to believe that the alien is a danger to the security of the United States. INA § 241(b)(3)(B)(iv). For the purposes of this clause, an alien who is described in INA § 237(a)(4)(B) (any alien who has engaged, is engaged, or at any time after admission engages in any terrorist activity under INA § 212(a)(3)(B)(iv)) shall be considered to be an alien for whom there are reasonable grounds for regarding as a danger to the security of the United States. Id.

Because the Court defers to the Board's credibility findings, it also accepts its findings that the *prima facie* evidence that Respondent engaged in terrorist activity and participated in the persecution of others constitutes *"prima facie* evidence of reasonable grounds for regarding him as a danger to the security of the United States." *See* Remand at 6. The Court also continues to find that Respondent was not credible in rebutting evidence of his participation in the Bwindi attack on March 1, 1999,

suggesting that the terrorist bar applies.  <u>See</u> Part II(B)(1), <u>supra</u>.

As requested by the Board, the Court has given the Respondent an opportunity to address the language of INA § 241(b)(3)(B)(iv), which finds reasonable grounds for regarding aliens described in INA § 237(a)(4)(B) as a danger to the security of the United States.  <u>See</u> Remand at 6-7. Subsequent to the remand, Respondent provided no convincing evidence to rebut the applicability of INA § 241(b)(3)(B)(iv) in this case.  The Court thus adheres to its initial finding that reasonable grounds exist for regarding him as a danger to the security of the United States, based on Respondent's participation in terrorist activity under INA § 237(a)(4)(B) and his role in the persecution of tourists at Bwindi, including U.S. citizens.  <u>See</u> INA § 241(b)(3)(B)(iv).

### III. CONCLUSION

After a careful review of the entire record, the Court continues to find not credible several material aspects of Respondent's testimony.  In light of its reassessment of Respondent's credibility, it finds that the terrorist activity, persecutor of others, and danger to the security of the United States bars to asylum and withholding of removal apply in this case.  Respondent's only available relief remains deferral of removal under the Convention Against Torture.

Accordingly, the Court enters the following order:

# ORDER

It Is Ordered that:

Respondent's application for asylum, pursuant to INA § 208(a), be **DENIED**.

It Is Further Ordered that:

Respondent be **REMOVED** to Rwanda pursuant to the charge in his Notice to Appear.

It Is Further Ordered that:

Respondent's application for withholding of removal to Rwanda, pursuant to INA § 241(b)(3), be **DENIED**.

It Is Further Ordered that:

Respondent's application for withholding of removal to Rwanda, pursuant to the Convention Against Torture, be **DENIED**.

It Is Further Ordered that:

Respondent's application for deferral of removal under Article 3 of the Convention Against Torture be **GRANTED**.

It Is Further Ordered that:

In accordance with 8 C.F.R. § 208.17(a), the respondent is hereby notified that deferral of removal: (1) does not confer any lawful permanent immigration status in the United States; (2) will not necessarily result in the respondent's release from DHS custody if the respondent is subject to DHS custody; (3) is effective only until terminated; (4) is subject to review and termination if an Immigration Judge determines that it is not likely that the respondent would be tortured in the country to which removal has been deferred or if the respondent requests that deferral be terminated; (5) applies only to the country in which it has been determined that the respondent is likely to be tortured and that the respondent may be removed at any time to another country where he is not likely to be tortured.

9 - 17 - 08
Date

Wayne R. Iskra
United States Immigration Judge

10

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1105-0065
**Notice of Appeal to the Board of Immigration
Appeals of Decision of Immigration Judge**

# GENERAL INSTRUCTIONS
### (Please read carefully before completing and filing Form EOIR-26)

## I.  When to Appeal:

- You must send the Notice of Appeal so that it is **received** by the Board within thirty (30) calendar days after the Immigration Judge's oral decision or within thirty (30) calendar days after the date the Immigration Judge's written decision was mailed if no oral decision was rendered.

- Simply mailing the Notice of Appeal within the time limit may not insure that the Notice of Appeal is timely received by the Board.  If your Notice of Appeal is received outside of the time limit it will be dismissed.

## II.  Where to Appeal:

- Send the Notice of Appeal and all attached documents to:

  Board of Immigration Appeals
  Appeal Processing Unit
  5107 Leesburg Pike, Suite 1711
  Falls Church, VA  22041

## III.  How to Appeal:

- Read all of these instructions.

- Fill out the Notice of Appeal completely, answering Items # 1 - 10 **in English only.**

- List (in Item #1) the name(s) and "A" Number(s) of all Applicant(s)/Respondent(s) who are appealing the decision of the Immigration Judge.

- Sign item #7.

- List the mailing address of all Applicant(s)/Respondent(s) in Item #8.

- Translate all documents that you attach to the Notice of Appeal **into English**.  All translations must include the translator's statement that the translator is competent and that the translation is true and accurate.

- Write your name(s) and "A" number(s) on all documents attached to the Notice of Appeal.

- Provide the opposing party with a copy of the completed Notice of Appeal and any attached documents.

- Complete and sign Item #10, "Certificate of Service."

## IV.  Paying for Appeal:

- Attach to the Notice of Appeal a check or money order for exactly one hundred and ten dollars (U.S. $110) payable to the "United States Department of Justice".  All checks must be drawn on a bank located in the United States.

- Write the name(s) and "A" Number(s) of all Applicant(s)/Respondent(s) on the check or money order.

## V.  If You Cannot Pay for the Appeal:

- Complete and submit a Fee Waiver Request (Form EOIR-26A).  The Board will review the request and decide whether to allow the appeal without payment of the fee.

An appeal is not properly filed unless the Notice of Appeal and all required documents are received within thirty (30) calendar days after the Immigration Judge's oral decision or within thirty (30) calendar days after the date the Immigration Judge's written decision was mailed if no oral decision was rendered.

## VI.  Lawyer or Representative Allowed:

- You may be represented by an attorney or a representative who is authorized to appear before the Board.  The Government will not pay for your attorney or representative.

- If you are represented by an attorney or authorized representative, he or she must file a Notice of Entry of Appearance Before the Board of Immigration Appeals (Form EOIR-27) with the Notice of Appeal.

## VII.  Specify Reasons for the Appeal:

- Give specific details of why you disagree with the Immigration Judge's decision.

- Specify the finding(s) of fact, the conclusion(s) of law, or both, that you are challenging.  If a question of law is presented, cite supporting authority.  If the dispute is over the findings of fact, identify the specific facts.

- Where the appeal concerns discretionary relief, state whether the alleged error relates to statutory grounds of eligibility or to the exercise of discretion and identify the specific factual and legal findings you challenge.

- If you do not give specific details in Item #4, the Board may dismiss your appeal for that reason alone, unless you give specific details in a separate written brief or statement filed with the Board.

## VIII.  Briefs:

- Indicate in Item #6 if you will file a separate written brief or statement.  The Board will send you a filing schedule and a transcript of the testimony.

- Even if you will file a brief or statement, you still should give detailed reasons for your appeal on the Notice of Appeal.

- Send a copy of your brief or statement to the opposing party and provide the Board with a written statement certifying that you have mailed or delivered the brief or statement to the opposing party.

**Summary Dismissal of Appeal:**
The Board may summarily dismiss any appeal or portion of any appeal in which: (A) The appellant fails to specify the reasons for the appeal (see Part VII); (B) The only reason specified by the appellant for his/her appeal involves a finding of fact or conclusion of law which was conceded by him/her at the hearing; (C) The appeal is from an order that grants the appellant the relief which he/she requested; (D) The Board is satisfied, from a review of the record, that the appeal is filed for an improper purpose, such as to cause unnecessary delay, or that the appeal lacks an arguable basis in fact or law; (E) The appellant indicates that he/she will file a separate written brief or statement in support of the appeal and, within the time set for filing, the appellant fails to file the brief or statement and does not reasonably explain such failure (see Part VIII); or (F) The appeal fails to meet essential statutory or regulatory requirements or is expressly excluded by statute or regulation.

## IX.  Oral Argument:

- If you ask for oral argument in Item #5, the Board will inform you if your request is granted.

- Even if you ask for oral argument, you still should give detailed reasons for your appeal on the Notice of Appeal.

- The Board ordinarily will not grant a request for oral argument unless you also file a brief.

## X.  Change of Address:

- If you move after you send your Notice of Appeal to the Board, you must give your new address to the Board within five (5) days after you move.  Use Form EOIR-33, "Change of Address."

- Attorneys or representatives must also let the Board know within five (5) days if they change addresses or phone numbers.  Use Form EOIR-27.  An attorney's or representative's change of address notification is only effective for the case in which it is submitted.

**Departure From the United States:**
If you leave the United States after an Immigration Judge's decision in deportation proceedings, but before you appeal the decision to the Board, you have waived your right to appeal.  If you leave the United States after filing an appeal with the Board from deportation proceedings, but before the Board decides your appeal, your appeal is withdrawn and the Immigration Judge's decision will take effect as if you had never filed an appeal.

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1105-0065
**Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge**

**1.**   List Name(s) and "A" Number(s) of all Applicant(s)/Respondent(s):

For Official Use Only

WARNING TO ALL APPLICANT(S)/RESPONDENT(S): Names and "A" Numbers of everyone appealing the order must be written in Item #1.

**2.**   Applicant/Respondent is currently ☐ DETAINED ☐ NOT DETAINED.

**3.**   Appeal from the Immigration Judge's decision dated _____.

**4.**   State in detail the reason(s) for this appeal. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

! **WARNING:** The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice unless you give specific details in a timely, separate written brief or statement filed with the Board.

Staple Check or Money Order Here.
Include your name(s) and "A" number(s)

(Attach more sheets if necessary)

5.  I   ☐ do
        ☐ do not          desire oral argument before the Board of Immigration Appeals.

6.  I   ☐ will
        ☐ will not        file a separate written brief or statement in addition to the "Reason(s) for
                          Appeal" written above or accompanying this form.

> **!  WARNING:** Your appeal may be summarily dismissed if you indicate in Item #6 that you will file a separate written brief or statement and, within the time set for filing, you fail to file the brief or statement and do not reasonably explain such failure.

SIGN HERE →   7.  X _____   _____
                    **Signature of Person Appealing**              **Date**
                    *(or attorney or representative)*

8.                                              9.

| **Mailing Address of Applicant(s)/Respondent(s)** | **Mailing Address of Attorney or Representative** |
|---|---|
| (Name) | (Name) |
| (Street Address) | (Street Address) |
| (Apartment or Room Number) | (Suite or Room Number) |
| (City, State, Zip Code) | (City, State, Zip Code) |

> **!  WARNING:** An attorney or representative will not be recognized as counsel on appeal and will not receive documents or correspondence in connection with the appeal, unless he/she submits a completed Form EOIR-27.

## CERTIFICATE OF SERVICE
### (Must Be Completed)

10.

I _____  mailed or delivered a copy of this notice of appeal
        (Name)

on _____ to _____
        (Date)                          (Opposing Party)

at _____ .
                    (Address of Opposing Party)

SIGN HERE →   X _____
                    **Signature of Person Appealing**
                    *(or attorney or representative)*

### Have You?

☐ Read all of the General Instructions
☐ Provided all of the requested information
☐ Completed this form in English
☐ Provided a certified English translation
  for all non-English attachments

☐ Signed the form
☐ Served a copy of this form and all attachments
  on the opposing party
☐ Completed and signed the Certificate of Service
☐ Attached the required fee or fee waiver request

## NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE
## BEFORE THE BOARD OF IMMIGRATION APPEALS
### EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

**TYPE OF PROCEEDING:**

- ☐ Deportation
- ☐ Removal
- ☐ Exclusion
- ☐ Bond Redetermination
- ☐ Motion to Reopen/Reconsider
- ☐ Rescission
- ☐ Disciplinary

**DATE**

**ALIEN NUMBER(S) (list lead alien number and all family member alien numbers if applicable)**

I hereby enter my appearance as attorney or representative for, and at the request of, the following named person(s):

**NAME** (First)     (Middle Initial)     (Last)

**ADDRESS** (Number & Street)     (Apt. No.)     (City)     (State)     (Zip Code)

Please check one of the following:

☐ 1.   I am a member in _good standing_ of the bar of the highest court(s) of the following State(s), possession(s), territory(ies), Commonwealth(s), or the District of Columbia:

    _Name(s) of Court(s)_        _State Bar No. (if applicable)_

(Please use space on reverse side to list additional jurisdictions.)

I ☐ am not (or ☐ am - explain fully on reverse side) subject to any order of any court or adminstrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law _and_ the courts listed above comprise _all_ of the jurisdictions other than federal courts where I am licensed to practice law.

☐ 2.   I am an accredited representative of the following qualified non-profit religious, charitable, social service, or similar organization established in the United States, so recognized by the Executive Office for Immigration Review (provide name of organization): _____

☐ 3.   I am a law student or law graduate, reputable individual, accredited official, or other person authorized to represent individuals pursuant to 8 C.F.R. § 292. (Explain fully on reverse side.)

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representation before the Board of Immigration Appeals. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**SIGNATURE OF ATTORNEY OR REPRESENTATIVE**    **EOIR ID#**    **TELEPHONE NUMBER (Include Area Code)**    **DATE**

**NAME OF ATTORNEY OR REPRESENTATIVE (TYPE OR PRINT)**    **ADDRESS**    ☐ Check here if this is a new address

### Certificate of Service

I _____ (Name) mailed or delivered a copy of the foregoing on _____ (Date) to the Immigration and Naturalization Service at _____ (Address)

OMB#1125-0005

X _____
     Signature of Attorney or Representative

**FORM BOIR-27**
**August 99**

**(Note: Alien may be required to sign Acknowledgement and Consent on reverse side of this form.)**

_(Internet Version)_

I HEREBY ACKNOWLEDGE THAT THE ABOVE-NAMED ATTORNEY OR REPRESENTATIVE REPRESENTS ME IN THESE PROCEEDINGS AND I CONSENT TO THE DISCLOSURE TO HIM/HER OF ANY RECORDS PERTAINING TO ME WHICH APPEAR IN ANY EOIR SYSTEM OF RECORDS.

| NAME OF PERSON CONSENTING | SIGNATURE OF PERSON CONSENTING | DATE |
| --- | --- | --- |
|  |  |  |

NOTE: *The Privacy Act of 1974 requires that if the person being represented is or claims to be a citizen of the United States or an alien lawfully admitted for permanent residence, he/she must sign this form.)*

**APPEARANCES** - An appearance shall be filed on EOIR Form-27 by the attorney or representative appearing in each appeal before the Board of Immigration Appeals (see 8 C.F.R. § 3.38(g)), even though the attorney or representative may have appeared in the case before the Immigration Judge or the Immigration and Naturalization Service. When an appearance is made by a person acting in a representative capacity, his/her personal appearance or signature shall constitute a representation that, under the provisions of 8 C.F.R. Chapter 3, he/she is authorized and qualified to represent individuals. Thereafter, substitution or withdrawal may be permitted upon the approval of the Board of a request by the attorney or representative of record in accordance with Matter of Rosales, 19 I&N Dec. 655 (1988). Further proof of authority to act in a representative capacity may be required.

**REPRESENTATION** - A person entitled to representation may be represented by any of the following:

(1) Attorneys in the United States as defined in 8 C.F.R. § 1.1(f).

(2) Law students and law graduates not yet admitted to the bar as defined in 8 C.F.R. § 292.1(a)(2).

(3) Reputable individuals as defined in 8 C.F.R. § 292.1(a)(3).

(4) Accredited representatives as defined in 8 C.F.R. § 292.1(a)(4).

(5) Accredited officials as defined in 8 C.F.R. § 292.1(a)(5).

**THIS FORM MAY NOT BE USED TO REQUEST RECORDS UNDER THE FREEDOM OF INFORMATION ACT OR THE PRIVACY ACT. THE MANNER OF REQUESTING SUCH RECORDS IS CONTAINED IN 28 C.F.R. §§ 16.1-16.11 AND APPENDICES.**

Public reporting burden for the collection of information is estimated to average 6 minutes per response, including the time for reviewing the data needed, completing and reviewing the collection of information, and record-keeping. Send comments regarding this burden estimate or any other aspect of this information collection including suggestions for reviewing this burden to the Executive Office for Immigration Review, 5107 Leesburg Pike, Suite 2400, Falls Church, VA 22041.

(Please attach additional sheets of paper as necessary.)

*(Internet Version)*

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0003
**Fee Waiver Request**

# FEE WAIVER REQUEST

Name

Alien Number ("A" Number)

> If more than one alien is included in your appeal or motion, only the lead alien need file this form.

I, _____ , declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I am the person above and that I am unable to pay the fee. I believe that my appeal/motion is valid, and I declare that the following information is true and correct to the best of my knowledge.

**Assets**

Wages, Salary $ _____ /month

Other Income _____ /month
(business, profession, self-employment, rent payments, interest, etc.)

Cash _____

Checking or Savings Account _____

Property _____
(real estate, automobile, stocks, bonds, etc.)

Other Financial Support _____ /month
(public assistance, alimony, child support, parent, spouse, friends, other family members, etc.)

**Expenses (including dependents)**

Housing $ _____ /month
(rent, mortgage, etc.)

Food _____ /month

Clothing _____ /month

Utilities _____ /month
(phone, electric, gas, water, etc.)

Transportation _____ /month

Debts, Liabilities _____ /month

Other _____ _____ /month
(specify)

Under the Paperwork Reduction Act, a person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose the least possible burden on you to provide us with information. The estimated average time to complete this form is one (1) hour. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.

Signature

Date

Form EOIR-26A
September 2002

*U.S. GPO: 2002-496-240/62474

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB#1125-0004; Expires August 31, 2005

# Alien's Change of Address Form/
# Board of Immigration Appeals

This form is not to be used for a change of address if you have filed an appeal or motion with the Board of Immigration Appeals. Note: if you are an attorney representing a person before the Board, do not use this form to indicate your own change of address; use Form EOIR-27A Notice of Entry of Appearance as Attorney or Representative Before the Board.

When to use this form: If you move, the law requires you to file this Change of Address Form with the Clerk's Office of the Board of Immigration Appeals. You must file this form within five (5) working days of a change in your address. Even if you have an attorney or representative, you should file this form with the Board every time you change your address. You should also file this form if you get a new telephone number.

How to use this form:
1. Complete the Change of Address Form below.
2. Send a copy of this form to the District Counsel for the Department of Homeland Security, and complete and sign the "Proof of Service" below to show you did this.
3. Send this form to the Board of Immigration Appeals. Follow the mailing instructions on the back of this form.
4. If you prefer to file this form in person, you may bring it to the Board of Immigration Appeals, Clerk's Office, 5201 Leesburg Pike, Suite 1300, Falls Church, Virginia.

Name: _____ Alien Number: A _____

| My **OLD** address was: | My **NEW** address is: |
|---|---|
| _____ <br> ("In care of" other person, if any) | _____ <br> ("In care of" other person, if any) |
| _____ <br> (Number, Street, Apartment) | _____ <br> (Number, Street, Apartment) |
| _____ <br> (City, State and ZIP Code) | _____ <br> (City, State and ZIP Code) |
| _____ <br> (Country, if other than U.S.) | _____ <br> (Country, if other than U.S.) |
| | _____ <br> (New Telephone Number) |

**✍ SIGN HERE ➜** X _____   _____

Signature                                                    Date

## PROOF OF SERVICE
### (You Must Complete This)

I _____ mailed or delivered a copy of this Change of Address Form on _____
       (Name)                                                                                      (Date)

to the District Counsel for the Department of Homeland Security (DHS) at _____.
                                                                         (Address of DHS District Counsel)

**✍ SIGN HERE ➜** X _____

Signature

Form EOIR - 33/BIA
Revised 05/03

# MAILING INSTRUCTIONS

*1) Fold the page at the dotted lines marked "Fold Here" so that the address is visible.*
*(IMPORTANT: Make sure the address section is visible after folds are made.)*
*2) Secure the folded form by stapling along the open end marked "Fasten Here."*
*3) Place appropriate postage stamp in the area marked "Place Stamp Here."*
*4) Write in your return address in the area marked "PUT YOUR ADDRESS HERE."*
*5) Mail the form.*

Under the Paperwork Reduction Act, a person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose the least possible burden on you to provide us with information. The estimated average time to complete this form is three (3) minutes. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.

## Fold Here First

**PUT YOUR ADDRESS HERE**

Place
Stamp
Here

**U.S. Department of Justice**

*Executive Office for Immigration Review*
*Board of Immigration Appeals*
*Clerk's Office*
P.O. Box 8530
Falls Church, Virginia 22041

## Fold Here Second

*U.S. GPO: 2003-496-240/72216          **Fasten Here**          Form EOIR - 33/BIA
Revised 05/03