# EXHIBIT G

THE DEPUTY SECRETARY OF STATE

WASHINGTON

September 19, 2008

Dear Mr. Schneider:

On October 18, 2007, I received a letter from Julie L. Myers, Assistant Secretary for Immigration and Customs Enforcement, requesting the Department of State's assistance with the proposed removal to Rwanda of Leonidas Bimenyimana, Gregoire Nyaminani, and Francois Karake, Rwandan citizens who were allegedly involved in the murder of two American citizens in Uganda.

As the enclosed background document explains, it is the Department of State's view that with the assurances we received from the Minister of Justice and Prosecutor General of Rwanda it is more likely than not that Mr. Bimenyimana, Mr. Nyaminani, and Mr. Karake would not be tortured in Rwanda, and that they may therefore be removed to Rwanda consistent with United States obligations under Article 3 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.  The Department of State is available for further consultations on this matter should you deem them necessary or helpful.

Given the sensitive nature of our discussions with the Government of Rwanda on this matter, I ask that the Department of Homeland Security inform us as to whether you agree that these assurances are sufficiently reliable to allow these individuals to be returned to Rwanda, and, if so, to consult closely with the Department of State on the extent and manner by which this information may be made public.

Sincerely yours,

John D. Negroponte

Enclosures:
1. Detailed Background Memo
2. Assurance Letters from the Rwandan Minister of Justice and Prosecutor General

The Honorable
    Paul A. Schneider,
        Deputy Secretary of Homeland Security.

## SUMMARY OF BWINDI CASE

### Background

In March of 1999, over 100 well-armed members of the Liberation Army of Rwanda (ALIR), a designated terrorist group on the Terrorist Exclusion List, overran park guards at Uganda's Bwindi Impenetrable Forest. The ALIR group took over 30 Western tourists hostage, segregated French-speakers from English-speakers, and marched the English-speakers deeper into the forest. Eight of these tourists (two Americans, two New Zealanders, and four Britons) and their Ugandan guide were beaten and hacked to death; the women victims were also raped before being murdered. ALIR released the other captives within a day.

### U.S. Criminal Cases and Immigration Procedures

On March 2, 2003, three suspects who had been arrested in Rwanda on charges relating to participation in ALIR and in Rwanda's genocide – Leonidas Bimenyimana, Gregoire Nyaminani, and François Karake – were paroled into the United States for criminal prosecution, pursuant to a memorandum of understanding between the U.S. and Rwandan governments. Each of the three had confessed to Rwandan and U.S. officials that they had taken part in the Bwindi attacks. They are currently in DHS-ICE custody.

During the criminal proceedings before the U.S. District Court of the District of Columbia, the suspects moved to suppress the statements they had made to Rwandan and U.S. officials during the investigation in Rwanda. On August 17, 2006, a District Court judge, finding that those statements were likely coerced in part through torture, granted their motion. The U.S. criminal proceedings were subsequently dismissed without prejudice on February 7, 2007, and the three men were transferred to DHS-ICE custody pending removal.

All three suspects filed claims for asylum and withholding of removal. Those claims were denied, but all three were granted deferrals of removal, pursuant to regulations implementing U.S. obligations under Article 3 of the Convention Against Torture (CAT), under which individuals cannot be removed to countries where it is more likely than not that they will be subject to torture.

Mr. Bimenyimana was ordered removed from the United States on February 28, 2008, but was granted a deferral of removal to Rwanda. Mr. Nyaminani's order of removal to Rwanda, which became final on July 22, 2008, was also

- 2 -

deferred.  Mr. Karake's order of removal, which was likewise deferred as to Rwanda, is currently on appeal before the Board of Immigration Appeals and is, therefore, not yet final.

## Torture Assurances From the Government of Rwanda

Pursuant to 8 C.F.R. 1208.18 (c), the Secretary of State may seek and forward to the Secretary of Homeland Security assurances from a country that an alien will not be tortured if removed to that country.  If, after receiving such assurances, DHS, in consultation with the Department of State, determines that such assurances are sufficiently reliable to allow the alien's removal consistent with Article 3 of the CAT, the Secretary of DHS may terminate an immigration judge's prior deferral of removal to that country.  In order to make such a recommendation to DHS, the Department needs to find that the foreign government's assurances are sufficient reason to believe that the person will not "more likely than not" be subject to torture.

Since February 2008, Embassy Kigali has been engaged with officials of the Government of Rwanda regarding the treatment Mr. Bimenyimana, Mr. Nyaminani, and Mr. Karake would receive if returned to Rwanda.  On August 18, 2008, the U.S. Chargé in Rwanda received formal, written assurances from both the Minister of Justice and Prosecutor General of Rwanda (see attached Tab 2). The assurances provide that these three men will be afforded all legal and procedural guarantees provided for under Rwanda's constitution, Rwandan law and Rwanda's international legal obligations, including as a party to the International Covenant on Civil and Political Rights, and in accordance with the provisions of Article 7, which prohibits both torture and other forms of cruel, inhuman or degrading treatment or punishment.  They also provide that the Government of Rwanda will grant access upon request, whether or not previously announced, to officials of the U.S. embassy and/or an agreed third party to visit Mesrs. Bimenyimana, Nyaminani, and Karake during any period in which they are in official custody in Rwanda.  In addition, the assurance from the Prosecutor General stated that any statement made by these three individuals obtained by Rwandan or U.S. officials between 2001 and 2003 would not be introduced into evidence in any prosecution in Rwanda.  While not legally required by CAT Article 3,  the assurance regarding these statements is important as a policy matter, as we would not want to be in the position of facilitating the prosecution of these

- 3 -

individuals based upon evidence that was thrown out by a U.S. Court as obtained in part through torture.

In the cases of Mr. Bimenyimana, Mr. Nyaminani, and Mr. Karake, we believe that, with these assurances, the potential for torture is not likely if the men are returned to Rwanda.

We note that the Government of Rwanda has been working to improve its adherence to human rights standards generally, as the Department of State recognized in its 2007 Country Reports on Human Rights (HRR). On the justice sector, the HRR reports that, "international observers and local human rights groups reported that torture or abuse of detainees in prisons was rare and not tolerated by officials." Further, the International Criminal Tribunal for Rwanda (ICTR) reported after a visit in late 2007 that detention centers in Kigali met international standards. Because Rwanda seeks to transfer 1994 Genocide cases/individuals from the ICTR in Arusha, as well as several other Western countries, it has placed high priority on improving the justice sector and ensuring that treatment of inmates meets international obligations. After assessing the conditions for removal, the UK decided in June to extradite four Rwandans accused of genocide-related crimes. The way the Government of Rwanda treats the individuals in the Bwindi case will be noted by the ICTR and other governments, thus affecting their decisions to extradite.

Freedom House has documented a similar improvement regarding civil liberties in Rwanda since 2003 (when the three men were brought to the United States), while World Bank Institute assessments show a steady improvement in the area of "rule of law" over that same period. Some noteworthy accomplishments over the past year in Rwanda include: a constitution and legal code which prohibit torture, abolishment of the death penalty, and the right to counsel for the accused.

Rwanda relies heavily on the United States for both political and develop-mental support. For instance, in FY 2008 the United States provided over $180 million in assistance to Rwanda, primarily in the health sector. In addition, in late July 2008, the Millennium Challenge Corporation announced that Rwanda will be the recipient of a $25 million Threshold Program which will be heavily focused on good governance, including voice and accountability and civil liberties.

- 4 -

The Rwandan government will not endanger its important and still growing relationship with the United States by failing to fulfill promises it has made to the U.S. government in this case. Rwandan officials at the highest levels are aware that the United States will monitor closely how Messrs. Bimenyimana, Nyaminani, and Karake are treated if they are returned to Rwanda.

In addition, both the Minister of Justice and Prosecutor General consented to the sharing of these assurances with the individuals to be removed, a U.S. Court and/or as part of public proceedings as may be necessary. Their willingness to allow these assurances to be made public further underscores the reliability of the commitments therein, as any deviation from them would potentially be subject to scrutiny not just by the United States but also by the individuals and their representatives, human rights organizations, the media, and other governments with whom the Rwandans may be engaged in extradition and related matters.

**REPUBLIC OF RWANDA**

*Kigali, on* 15/08/08

N° 0541/M.o1.08



**MINISTRY OF JUSTICE**

H. E. The Ambassador,
Embassy of United States of
America
**RWANDA**

RE: <u>GOVERNMENT OF RWANDA ASSURANCES ON BWINDI DEFENDANTS</u>

H. E. Ambassador,

The Government of Rwanda would like to make the following guarantees and assurances in respect to the Bwindi defendants named:

1. **Leonidas Bimenyimana**
2. **Gregoire Nyaminani**
3. **Francois Karake**

1.     The Government of Rwanda will provide Mssrs. Bimenyimana, Nyaminani and Karake with all legal and procedural guarantees provided for under the Rwanda Constitution, Rwanda law, and Rwanda's international legal obligations, including as party to the International Covenant on Civil and Political Rights, and in accordance with the provisions of Article 7.

2.     The Government further guarantees that strict adherence to the principle of due process will be fully respected to the letter in accordance with Rwanda Laws and on the basis of International Law and international standards.

3.     The Government of Rwanda will grant access upon request; whether or not previously announced, to the U.S. Embassy and/or an agreed upon third party to visit Mssrs. Bimenyimana, Nyaminani and Karake during any period in which they are in official custody.

B.P 160 KIGALI   Tel : (250) 586561     Fax : (250) 586580     Website : www.minijust.gov.rw

4.     The Government understands that the circumstances may require the sharing of such assurances with U.S court, with the Bwindi defendants and their representatives, and/or as part of a public record of proceedings.


Please accept the assurances of my highest consideration.

Yours sincerely.

Tharcisse Karugarama
**Minister of Justice/Attorney General**

REPUBLIQUE DU RWANDA
REPUBLIC OF RWANDA

Kigali, *13./ 02./* 2008
N°*V./08.*/D11/A/PGR/CAB



PARQUET GENERAL DE LA REPUBLIQUE
OFFICE OF THE PROSECUTOR GENERAL OF THE REPUBLIC
**B.P.1328 KIGALI**

Cheryl J. Sim
Chargé d'Affaires a.i
**Embassy of the United States of America**

Assurances of the Office of the Prosecutor General on BWINDI
Defendants Léonidas BIMENYIMANA, Grégoire NYAMINANI and
François KARAKE.

I, Martin NGOGA, Prosecutor General of the Republic of Rwanda,
offer the following guarantees and assurances in respect to the
BWINDI defendants named above.

> A. Making reference to and endorsing the Assurances and
> Guarantees conveyed by Minister of Justice and
> Attorney General Tharcisse KARUGARAMA, the Office of
> the Prosecutor General will not introduce into evidence
> in any prosecution any statement made by Mssrs.
> BIMENYIMANA, NYIRAMINANI and KARAKE obtained
> between 2001 and 2003 by Rwandan or United States
> officials.
>
> B. Investigation and prosecution of the three named
> defendants will be conducted in accordance with the
> Rwandan Constitution, Rwandan law, and Rwanda's



international legal obligations, including as a party to the International Covenant on Civil and Political Rights, and in accordance with the provisions of Article 7.

C. The Office of the Prosecutor General understands that circumstances may require the sharing of such assurances with a U.S. court, with the BWINDI defendants and their representatives, and/or as part of a public record of proceedings.

**Martin NGOGA**
**Prosecutor General**