**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| FRANCOIS KARAKE *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 09-2082 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 2 |
| | : | | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING AS MOOT THE PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER;
DENYING THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**I.   INTRODUCTION**

This matter comes before the court on the plaintiffs' motion for a temporary restraining order and preliminary injunction. The plaintiffs are three Rwandan nationals currently detained in the United States by the Department of Homeland Security ("DHS" or "the defendant"), Immigration and Customs Enforcement Division ("ICE"). The plaintiffs, who are facing removal back to Rwanda, challenge the constitutionality of the process implemented by ICE to effectuate their deportation. Because the plaintiffs' due process claim is not ripe for judicial review, the court denies their motion for a preliminary injunction.[1]

---

[1] On November 6, 2009, the defendant stipulated that it would not "deport or otherwise remove Plaintiffs to Rwanda before December 8, 2009." Def.'s Stipulation at 2. Accordingly, the court denies as moot the plaintiffs' motion for a temporary restraining order.

## II.    FACTUAL & PROCEDURAL BACKGROUND

The plaintiffs are citizens of Rwanda and ethnic Hutus.[2]  Pls.' Mot. at 3.  They allege that they were persecuted by the Rwandan Patriotic Army ("RPA") and, as a result, resorted to joining the Liberation Army of Rwanda ("ALIR"), a group opposed to the RPA.  *Id*.  In 1999, as members of the ALIR, the plaintiffs participated in a mission to the Bwindi Impenetrable Forest in Uganda, during which some members of the ALIR company allegedly killed eight western tourists – two of whom were Americans – and one Ugandan park ranger.  *Id*. at 4; Def.'s Opp'n at 2.

The RPA captured the plaintiffs in 2001 and held them for two years at Kami camp, which the plaintiffs describe as an "unofficial detention center to which only the RPA had access."  Pls.' Mot. at 4.  According to the plaintiffs, while held at Kami, they were subjected to "brutal physical and psychological torture."  *Id*.  Eventually, each plaintiff confessed to some level of involvement in the killings.  *Id*. at 4-6; Def.'s Opp'n at 2.

In March 2003, the plaintiffs were extradited to the United States to stand trial for the killings.  Pls.' Mot. at 6; Def.'s Opp'n at 2.  Judge Huvelle granted the plaintiffs' motion to suppress their confessions as coerced and products of torture, *United States v. Karake*, 443 F. Supp. 2d 8, 85-86 (D.D.C. 2006), and granted the government's resulting motion to dismiss the indictment, *United States v. Karake*, No. 02-0256, slip op. (D.D.C. Feb. 7, 2007).

Following the dismissal of the criminal case in February 2007, the plaintiffs faced removal back to Rwanda.  Pls.' Mot. at 8; Def.'s Opp'n at 3.  During the removal proceedings, each plaintiff applied for asylum pursuant to §208(a) the Immigration and Nationality Act

---

[2]    Judge Huvelle, in an order issued in the plaintiffs' criminal case, has provided a detailed historical overview of the relevant ethnic conflict in Rwanda and a thorough explanation of each plaintiff's alleged persecution and torture.  *See United States v. Karake*, 443 F. Supp. 2d 8, 14-20 (D.D.C. 2006).

("INA"), 8 U.S.C. § 1158(a), withholding of removal pursuant to § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), withholding of removal under the Convention Against Torture ("CAT") pursuant to 8 C.F.R. § 1208.16 and deferral of removal under the CAT pursuant to 8 C.F.R. § 1208.17.  Pls.' Mot. at 8, Exs. A-C.  The immigration court ordered that the plaintiffs be removed to Rwanda, but granted their applications for deferral of removal under the CAT.  *Id.*  The immigration court denied the plaintiffs' other requests, *id.*, and the plaintiffs have been detained in ICE detention facilities since at least late 2007, Pls.' Mot. at 9.[3]

On August 25, 2009, ICE notified the plaintiffs that it was considering terminating their deferrals of removal based on diplomatic assurances the Department of State had received from Rwanda's Chief Prosecutor and the Rwandan Minister of Justice that none of the plaintiffs would be tortured if removed to Rwanda.[4]  *Id.*, Exs. F-G; Def.'s Opp'n at 4.  ICE gave the plaintiffs until November 6, 2009, to submit written evidence demonstrating why the diplomatic assurances should not be credited.  Pls.' Mot. at 9; Def.'s Opp'n at 4.  On November 5, 2009, the plaintiffs filed a complaint in this court and moved for the entry of a temporary restraining order and preliminary injunction.  *See generally* Compl.; Pls.' Mot.  On November 6, 2009, the plaintiffs filed their written response to the August 25, 2009 notice from ICE.  Def.'s Opp'n at 4.  The court set an expedited briefing schedule, *see* Minute Order (Nov. 9, 2009), and the defendant stipulated that the plaintiffs would not be removed before December 8, 2009, *see* Def.'s

---

[3]   Plaintiffs Bimenyimana and Nyaminani filed petitions for writs of habeas corpus in the United States District Court for the Eastern District of Virginia, Pls*.*' Mot. at 9, which they voluntarily dismissed on November 17 and 18, 2009, respectively, Def.'s Opp'n at 5 n.4.  Plaintiff Karake did not file a habeas petition.  Pls.' Mot. at 9.

[4]   The Rwandan government further assured the Department of State that any domestic prosecution of the plaintiffs would proceed in accordance with Rwanda's constitution, laws and international legal obligations, and that none of the plaintiffs' previously coerced confessions would be used against them.  *See* Pls.' Mot., Ex. G.

Stipulation. The defendant has not reached a final decision regarding whether to terminate the plaintiffs' deferrals of removal.

### III.   ANALYSIS

#### A.   Legal Standard for Ripeness

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. CONST. ART. III, § 2, cl. 1. The case-or-controversy requirement reflects the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Among the various doctrines developed by the courts to test the fitness of controversies for judicial resolution is the ripeness doctrine. *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48-49 (D.C. Cir. 1999).

The ripeness doctrine asks "whether the case has been brought at a point so early that it is not yet clear whether a real dispute to be resolved exists between the parties." 15 FED. PRAC. 3d § 101.70[2]. Reflecting both constitutional and prudential considerations, the doctrine "is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993) (stating that "[the] ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction").

Toward that end, a court must examine whether a dispute is fit for judicial review and whether withholding court consideration would cause hardship to the parties. *Ohio Forestry Ass'n, Inc.*, 523 U.S. at 733; *Wyo. Outdoor Council*, 165 F.3d at 48. To measure fitness, the court looks to "whether [the issue] is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Atl. States Legal Found. v. Envt'l Prot. Agency*, 325 F.3d 281, 284 (D.C. Cir. 2003). If a claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," it is not ripe for adjudication. *Id.* As for hardship, the court looks to see whether the party can show that it will suffer injury in the interim. *Id.*

### B. The Court Denies the Plaintiffs' Motion for a Preliminary Injunction

The plaintiffs argue that the process implemented by ICE to determine whether to terminate their deferrals of removal constitutes a denial of their due process rights because ICE has not provided them with the right to a hearing before a neutral and impartial decisionmaker. Pls.' Mot. at 13-14. Furthermore, the plaintiffs contend that there is no guarantee that they will obtain the full record or be notified when a final decision is made. *Id.* at 14.

In response, the defendant first states that "it will not remove Plaintiffs from the United States any sooner than 30 days following [a decision on whether to terminate their deferred removal], in order to permit Plaintiffs to attempt to vindicate any legal claims they wish to advance." Def.'s Opp'n at 5. Thus, the defendant argues, the plaintiffs' concern that they may be removed without notice of a final decision is baseless. *Id.* at 27. The defendant also maintains that the plaintiffs' due process claims are not ripe for review because there is no final

administrative decision from which the plaintiffs seek relief. [5]  Def.'s Opp'n at 15-17.

Determining whether a case is ripe for judicial review involves a two-part test: first, the court must consider the "fitness of the issues for judicial decision," and second, it must examine the "hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. The question of whether an issue is fit for judicial decision turns on "whether [the issue] is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Atl. States Legal Found.*, 325 F.3d at 284. Because the facts of this case are still under review by ICE, the defendant contends that the issues are not fit for judicial determination. Def.'s Opp'n at 16. Specifically, the defendant argues that the issues are not purely legal because no final administrative decision has been made. *Id*. The plaintiffs disagree, noting that the decision to implement the allegedly unconstitutional process has already been made and that they are currently subject to that process. Pls.' Reply at 14.

The plaintiffs have several options at their disposal once a final decision is made on the merits of whether to terminate their deferrals of removal. For instance, if a final order of removal is issued, the plaintiffs may challenge that order in the appropriate circuit court of

---

[5]  The defendant also responds to the plaintiffs' factual allegations and challenges the court's jurisdiction. *See generally* Def.'s Opp'n. For instance, the defendant argues that the plaintiffs are not prejudiced by the lack of a hearing, and, even if they were, such a decision is not properly before this court and can be rectified by the appropriate appellate process. *Id*. at 31. The defendant also posits that, because ICE consults with the Department of State regarding whether to credit Rwanda's assurances, the plaintiffs' characterization of ICE as a unilateral decisionmaker is inaccurate. *Id*. at 28. Because the court determines that the due process issues are not ripe, it does not reach the factual arguments. The defendant further alleges that this court lacks jurisdiction becase appeals of final orders of removal and claims under the CAT must be made in an appropriate circuit court of appeals. Def.'s Opp'n at 7. The plaintiffs point out, and the court agrees, that these arguments mischaracterize the plaintiffs' claims. *See* Pls.' Reply at 1-2. The claims the plaintiffs bring before this court are not brought under the CAT and do not challenge a final removal order; rather, the plaintiffs allege that their constitutional rights to due process are being violated. *See* Compl. ¶¶ 55-62.

appeals. *See* 8 U.S.C. § 1252(a)(1), (4); 8 U.S.C. § 1231(a)(4). Additionally, the plaintiffs' constitutional claims will be ripe once a final order has been issued. *Atl. States Legal Found.*, 325 F.3d at 284. Thus, the plaintiffs will have an opportunity to appeal an unfavorable decision or challenge the constitutionality of the process giving rise to that decision. Lastly, the court does not discount the possibility that ICE may rule in the plaintiffs' favor and decide not to terminate their deferrals of removal.

The plaintiffs quote *Nasierowski Brothers Investment Company v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991), for the proposition that "in procedural due process claims, 'the allegedly infirm process is an injury in itself." Pls.' Reply at 14. The court recognizes this guidance from the Sixth Circuit, but notes that this circuit has further held that "even purely legal issues may be unfit for review." *Atl. States Legal Found.*, 325 F.3d 281, 284. Here, it is clear that the plaintiffs had an incomplete understanding of the process implemented by the defendant at the time they filed their motion.[6] *Compare* Pls.' Mot. at 19 (stating that "it is not unusual for ICE to deport aliens immediately once it receives clearance to remove them") *with* Def.'s Opp'n at 5 (specifying that the plaintiffs will have thirty days to file an appeal once the final decision has been made). Based on the limited understanding the plaintiffs had at the time they filed their motion, and the additional information provided by the defendant throughout the briefing of these issues, the court determines that the issues are not purely legal, would benefit from a more concrete setting and are not sufficiently final. *Atl. States Legal Found.*, 325 F.3d at 284.

Regarding the hardship prong, the defendant contends that the plaintiffs will not actually face any hardship until a final decision is made. Def.'s Opp'n at 17. The defendant further proffers that it will suffer a hardship if "its deliberations regarding deferral of removal are

---

6    The court casts no blame for this missing information on the plaintiffs' part.

disrupted, or if its decision-making authority is undermined by an interim judicial determination." *Id*. The plaintiffs, on the other hand, state that the hardship they face is the ongoing infringement of their due process rights. *See* Pls.' Reply at 15-16. As stated above, the process utilized by the defendant is not in a posture suitable for a judicial determination and the plaintiffs will have the opportunity and avenues to challenge a final decision. Accordingly, this case is not ripe for review before this court.[7]

### IV.   CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion for a preliminary injunction and denies as moot the plaintiffs' motion for a temporary restraining order. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of December 2009.

RICARDO M. URBINA
United States District Judge

---

[7] The court appreciates the very real danger the plaintiffs may face if they are returned to Rwanda, and reiterates that this decision was made on ripeness grounds alone.

8